IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KYLE C. ANDERSON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 3:24-cv-01045 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| BRIGHT HORIZONS FAMILY SOLUTIONS, INC., | ) ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions for partial dismissal filed by Defendant, Bright Horizons Family Solutions, Inc. ("Defendant").[1] First, Defendant filed a "Motion To Dismiss Plaintiffs' Claim For Punitive Damages" (Doc. No. 14, "Punitive Damages Motion"), with an accompanying memorandum in support of the motion (Doc. No. 15). Plaintiffs, Kyle C. Anderson

---

[1] Defendant recently filed a "Motion for Leave to File Motion for Partial Summary Judgment," (Doc. No. 56). The next day, Defendant filed its "Motion for Partial Summary Judgment," (Doc. No. 58), which seeks summary judgment on Plaintiffs' claims for recklessness, RIED, and punitive damages.

  Arguably, when a party requests leave to file something, it should not file it unless and until it obtains the requested leave to do so; otherwise, the filer obtains by *its own action* (of filing) the very thing that the filer ostensibly seeks to obtain via *leave of court*: the filing of the document. Viewed this way, the filing of the document puts the metaphorical cart before the horse. Also, to the extent that the filer's intent is for the court to say to itself in effect, "Gee, the filer already went through all the trouble to prepare this filing, so it would be shame not to consider it," such intent is rather nefarious. On the other hand, the filer could argue that in requesting leave to "file" the document that it is contemporaneously filing, it is actually requesting (instead of leave to file the document) that the Court *consider* the filing on the merits. In addition, the filer could argue that in order to determine whether to consider the filing on the merits, the court needs to actually see the document—which the court will be able to do only if the document is filed.

  In short, there is a legitimate question as to whether the proposed motion for partial summary judgment (Doc. No. 58) should have been filed. Ultimately, if Defendant would not have filed its motion for partial summary judgment and instead awaited the Court's response to its motion for leave to file, as Defendant filed those motions on October 20, 2025, and October 21, 2025, the Court could have informed Plaintiffs that a ruling on its motions to dismiss was imminent. Instead, Defendant opted to file its partial summary judgment motion regarding the claims that were the subject of its motions to dismiss. The Court declines to address this issue further herein, except to note that it will be Defendant's responsibility to determine the extent to which this Order affects its proposed motion for partial summary judgment.

and Corrie D. Anderson (collectively, "Plaintiffs"), filed a response in opposition (Doc. No. 16), to which Defendant filed a reply (Doc. No. 17). Defendant also filed a "Partial Motion To Dismiss Plaintiffs' Amended Complaint," (Doc. No. 28, "RIED Motion"), seeking to dismiss Plaintiffs' claim for reckless infliction of emotional distress ("RIED"). Defendant filed an accompanying memorandum in support of the motion (Doc. No. 29). Plaintiffs filed a response in opposition (Doc. No. 30), to which Defendant filed a reply (Doc. No. 33). For the reasons stated herein, the Punitive Damages Motion (Doc. No. 14) and the RIED Motion (Doc. No. 28) are each GRANTED.

ALLEGED FACTS[2]

Plaintiffs are the parents of minor children Carter Anderson and Jack Anderson. (Doc. No. 23 at ¶ 3). Defendant, a childcare center, contracted with the Plaintiffs to render childcare services for their sons Carter and Jack. (*Id.* at ¶¶ 4, 6). As a childcare center, Defendant is governed by Tennessee's Licensure Rules and Regulations for Child Care Agencies specified in Tenn. Comp. R. & Regs. 1240-04-01. (*Id.* at ¶ 7). Plaintiffs' children were within the class of citizens protected by these rules and regulations. (*Id.*) The Tennessee Department of Human Services ("TDHS") monitors childcare centers for compliance with licensing rules to promote childcare environments that are safe and healthy. (*Id.* at ¶ 8). TDHS reached the conclusion that Defendant violated various rules and regulations specified in Chapter 1240-04-01 in several ways. (*Id.* at ¶ 9). TDHS sent a

---

[2] The facts herein are taken from Plaintiffs' amended complaint (Doc. No. 23, "Amended Complaint"), which is the pleading implicated by the Motions. For purposes of the Motions, the facts in the Amended Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiff alleges") to denote that they are not being taken as true (at least, not without further discussion as to how and why they are being taken as true) but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true. The Court emphasizes that whenever it states (alleged) facts without qualifiers, consistent with the above-stated protocols, it has not found the alleged facts to be the actual facts.

formal notice to Defendant that licensure violations had occurred, and those violations are contained in a written report (or "notice," as the report is also called at times). (*Id.*).[3]

Plaintiffs allege that "[s]taff at Bright Horizons violated the regulation [at Tenn. Comp. R. & Regs. 1240-04-01-.13] by withholding food from Carter and Jack due to their alleged behavior at the table. These children were not offered milk on certain occasions, and food was thrown away if they did not comply with rules at the table." (*Id.* at ¶¶ 10, 12). Second, Plaintiffs allege that "[s]taff at Bright Horizons violated the regulation [at Tenn. Comp. R. & Regs. 1240-04-01-.15] by shaming, humiliating, frightening, and/or abusing Carter and Jack. The abuse included pinching, grabbing, ear pulling, and bending of their toes. Staff also violated the regulation by subjecting Carter to corporal punishment." (*Id.* at ¶¶ 13, 17). Third, Plaintiffs allege that "[s]taff at Bright Horizons violated the regulation [at Tenn. Comp. R. & Regs. 1240-04-01-.05] by falsifying digital daily reports. Information in diapering and mealtime was not accurate. Documents indicated diapers were checked and changed, but that did not happen. Activities were staged for photos to parent, when food was withheld from Carter and Jack for alleged misbehavior." (*Id.* at ¶¶ 18, 19).

Plaintiffs also allege that "[s]taff at Bright Horizons violated the regulation [at Tenn. Comp. R. & Regs. 1240-04-01-.09] when they informed the director and assistant director of suspected abuse of Carter and Jack, yet these staff did not report suspected abuse to TDCS." (*Id.* at ¶¶ 20, 21). Plaintiffs further allege that "[m]anagement at Bright Horizons violated the regulation [at Tenn. Comp. R. & Regs. 1240-04-01-.10] when staff informed them of suspected abuse of Carter

---

[3] Although the Amended Complaint purports to cite this report, stating, *"See* Exhibit A," (Doc. No. 23 at ¶ 9), Plaintiffs did not attach an exhibit to their Amended Complaint (i.e., did not file anything noted on the docket as an exhibit to the Amended Complaint). Plaintiffs did attach an "Exhibit A" to their original complaint (Doc. No. 1), and that exhibit, although not labeled, appears to be a report by TDHS. (Doc. No. 1-1). Plaintiffs argue that the TDHS report was "incorporated by reference" in the Amended Complaint. (Doc. at 4). This is debatable, but ultimately the Court does treat that document as Exhibit A to the Amended Complaint despite Plaintiffs' carelessness in not attaching the document to the Amended Complaint.

and Jack yet failed to report that suspected abuse to TDCS, local law enforcement, or the judge of the juvenile court in the county of the child's residence." (*Id.* at ¶¶ 22, 27). Further "[s]taff at Bright Horizons . . . did not change Jack immediately when he was soiled. Jack's diapers were not checked throughout the day" (*Id.* at ¶ 29), and "Carter and Jack had been involved in incidents including ear pulling, pinching, verbal abuse, and bending of feet and toes. There were eyewitnesses to these incidents which were not reported to Mr. Anderson or Mrs. Anderson using incident reporting methods." (*Id.* at ¶ 31).[4]

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint on August 27, 2024, asserting claims for negligence and recklessness, and seeking compensatory and punitive damages. (Doc. No. 1, "Complaint"). In response, Defendant filed the Punitive Damages Motion (Doc. No. 14), seeking to dismiss Plaintiffs' claim for punitive damages. Thereafter, Plaintiffs filed an amended complaint (Doc. No. 23, "Amended Complaint"), which is almost identical to its original Complaint, except that the Amended Complaint added a claim for RIED. Defendant then filed its RIED Motion (Doc. No. 28), seeking to dismiss Plaintiffs' claim for RIED.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[4] With respect to the last two paragraphs in this section—which discuss Plaintiffs' allegations that Defendant's staff and management violated regulations due to what they did and did not do—the Court accepts as true the allegations regarding what Defendant's staff and management did and did not do but does not accept the legal conclusion that such actions and inactions violated the regulations in question.

defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (citing *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief, even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8, and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).[5]

## DISCUSSION

### A. Applying the Punitive Damages Motion to the Amended Complaint.

"The general rule is that filing an amended complaint moots pending motions to dismiss." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). But "district courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are 'substantially identical to the original complaint.'" *Id.*; *Grand Isle Games, LLC v. Entities, P'ships, & Unincorporated Ass'ns Listed on Schedule A*, No. 3:25-CV-00390, 2025 WL 2324079, at *3 (M.D. Tenn. Aug. 12, 2025). Further, "[c]ourts are especially cognizant of not exalting form over

---

[5] Although (as explained in a footnote above), the Court treats the TDHS report as being an exhibit to the Amended Complaint, this does not aid Plaintiffs for several reasons. First, just because the TDHS is an exhibit to the Amended Complaint, that does not mean automatically that all alleged facts made or referred to in the report automatically become allegations made by Plaintiffs in the Amended Complaint. A plaintiff might make a document an exhibit to the complaint for any number of reasons that are totally unrelated to whether facts asserted in the document (if any) are true. Instead, if Plaintiffs want *some or all of the factual content* of this report to be treated as *their* allegations for purposes of the Amended Complaint, they needed to make clear what factual content from the report they wanted treated as effectively incorporated by reference into the Amended Complaint's allegations. Plaintiffs did no such thing.

Second, the facts asserted in the report do not help Plaintiffs anyway because they are not sufficiently specific to the circumstances about which Plaintiffs complain. The TDHS report discusses a visit to the "Growing Together Learning Center," but in their Amended Complaint, Plaintiffs never allege that Defendant operates this facility or has a connection to it. Moreover, the TDHS report does not discuss Plaintiffs' children specifically. Rather, the report discusses "children" generally at the Growing Together Learning Center.

Third, Defendant argues, and Plaintiffs do not refute, that this investigation of Defendant was closed as "unsubstantiated." (Doc. No. 17 at 5 n.1). All of these factors call into question the reliability and usefulness of the TDHS report in resolving this dispute.

Fourth, as far as the Court can tell, Plaintiffs have expressly alleged in the Amended Complaint the information they apparently deem probative from the report. For example, it would be unnecessary for this Court to rely on the TDHS report to supply the allegation that "food was being withheld from children due to behavior at the table," (Doc. No. 1-1 at 1), because the Amended Complaint alleges that Defendant "withh[eld] food from Carter and Jack due to their alleged behavior at the table" (Doc. No. 23 at ¶ 12). In short, the TDHS report is generally unhelpful to Plaintiffs on the instant motions, at least without more explanation as to how the report applies in this case specifically.

substance when the amended complaint is 'substantially identical to the original complaint.'" *Cornerstone Move Mgmt., LLC v. Paxton*, No. 1:24-CV-366, 2025 WL 580748, at *1 (S.D. Ohio Feb. 21, 2025). Accordingly, the Court can, at its discretion, "construe [d]efendant[']s motions and all accompanying briefing as applicable to the claims set forth in the Amended Complaint." *Brown v. Twentieth Century Fox Home Ent.*, No. 6:14-CV-147, 2015 WL 5081125, at *4 (E.D. Ky. Aug. 27, 2015).

The Court finds that Plaintiffs' Amended Complaint is "substantially similar to [their] original [complaint]." *Cornerstone*, 2025 WL 580748, at *1. In fact, Plaintiffs' Amended Complaint appears to be an exact copy of the original Complaint with respect to everything other than the RIED claim; the only difference between the two versions of the complaint is the addition of the RIED claim in the Amended Complaint. (*Compare* Doc. No. 1 *with* Doc. No. 23). Further, the Amended Complaint did not attempt to address any purported "defects" that Defendant's Punitive Damages Motion discusses. *See Cornerstone*, 2025 WL 580748, at *1. For example, if Plaintiffs' Amended Complaint had included additional facts to support its request for punitive damages, then it would be patently inappropriate for this Court to consider Defendant's Punitive Damages Motion that was directed at Plaintiffs' original Complaint. However, Plaintiffs did not use the Amended Complaint to attempt to address any purported defects in the original Complaint. Additionally, Plaintiffs have not addressed this issue in any way. Given the substantial similarity between the Complaint and the Amended Complaint, and in the interest of resolving this dispute in the most efficient manner, the Court will exercise its discretion to apply Defendant's Punitive Damages Motion to the Amended Complaint. Therefore, the Court will consider both whether Plaintiffs stated a claim for punitive damages and whether Plaintiffs have stated a claim for RIED.

### B. Defendant's Punitive Damages Motion and RIED Motion.

####   i.   *Punitive Damages Motion.*

"Under Tennessee law, punitive damages are warranted in 'cases involving only the most egregious of wrongs.'" *Tipton v. CSX Transp., Inc.*, No. 3:15-CV-311, 2017 WL 10398182, at *27 (E.D. Tenn. Oct. 25, 2017) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)). "Punitive damages may only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulently or recklessly." Tenn. Code Ann. § 29-39-104. Here, Plaintiffs allege only recklessness. (Doc. No. 23 at 9-10). "A defendant acts recklessly for these purposes if the defendant 'is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.'" *Tipton*, 2017 WL 10398182, at *27 (quoting *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 532 (Tenn. 2008)).

Additionally, Plaintiffs' theory of liability against Defendant is based on vicarious liability only, that is, liability for the actions and omissions of the employees at Bright Horizons who allegedly engaged in the alleged misfeasance and nonfeasance. As a result, Plaintiffs' path to punitive damages is statutorily cabined as follows:

> "[P]unitive damages may be awarded against a defendant based on vicarious liability for the acts or omissions of an agent or employee only if the finder of fact determines by special verdict based on clear and convincing evidence that one or more of the following has occurred:
>
> > (A) The act or omission was committed by a person employed in a management capacity while that person was acting within the scope of employment;
> >
> > (B) The defendant was reckless in hiring, retaining, supervising or training the agent or employee and that recklessness was the proximate cause of the act or omission that caused the loss or injury; or

> (C) The defendant authorized, ratified or approved the act or omission with knowledge or conscious or reckless disregard that the act or omission may result in the loss or injury.

Tenn. Code Ann. § 29-39-104(g)(1)(A)-(C).[6]

As an initial matter, Plaintiffs argue that "[p]unitive damages are statutory damages, not a standalone claim." (Doc. No. 16 at 2). Apparently, Plaintiffs here imply that the claim for punitive damages cannot be dismissed, because there is no "claim" for punitive damages. Plaintiffs are correct that "punitive damages" is a kind of remedy and that a request for an award of them—although typically referred to as a claim—is not a "claim" in the sense of being a cause of action or theory of liability. *See StarLink Logistics Inc. v. ACC, LLC*, 653 F. Supp. 3d 462, 471 n.8 (M.D. Tenn. 2023). But punitive damages are a remedy associated with tort liability, and the Court can treat Plaintiffs' request for punitive damages like tort claims asserted by Plaintiffs under state law. *Id.* So courts have often entertained, and where appropriate have granted, requests for punitive damages under Tennessee law. *See, e.g.*, *N.H. ex rel. Hernandez v. Sequoyah Council, Inc.*, No. 2:11-CV-171, 2012 WL 2126863, at *2 (E.D. Tenn. Apr. 30, 2012) (stating that "to survive a motion to dismiss, a claim for punitive damages must be plausible as defined by Tennessee law" and then granting the defendant's motion to dismiss the plaintiff's request for punitive damages). For its part, the U.S. Supreme Court has indicated (albeit in connection with law other than *Tennessee* law) that requests for punitive damages are subject to a motion to strike or dismiss. *See The Dutra Grp. v. Batterton*, 588 U.S. 358, 368 (2019) (reversing court of appeals, which had

---

[6] The Court notes that in *Lindenberg v. Jackson Nat'l Life Ins. Co.*, the Sixth Circuit held that Tenn. Code Ann. 29-39-104 was unenforceable "to the extent that it purports to cap punitive damage awards." 912 F.3d 348, 366 (6th Cir. 2018). However, *Lindenberg* did not address the statute's limitation on punitive damages against a defendant under subsection 29-39-104(g). Further, whether there is a valid punitive damages cap that would be applicable in the present case is simply not relevant to determining whether Plaintiffs have plausibly stated a claim for punitive damages.

upheld the district court's denial of a motion to strike a "claim for punitive damages" under maritime law). So, the Court has no doubt of its authority to dismiss a claim for punitive damages pursuant to *Iqbal* and *Twombly* when the alleged factual matter fails to plausibly suggest an entitlement to punitive damages. Accordingly, this Court will decide on the merits whether Plaintiffs' request for punitive damages should survive a motion to dismiss.

It appears that Plaintiffs base their theory of recovery on all three alternative theories recognized by Tenn. Code Ann. § 29-39-104(g)(1) (that is, those theories laid out above as found in Tenn. Code Ann. § 29-39-104(g)(1)(A)-(C)), any one of which independently can support a claim for punitive damages based on vicarious liability. But as the Court will detail below, Plaintiffs cannot succeed under any of these theories, because a "mere formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) (internal quotation marks and citation omitted).[7] And Plaintiffs' "bare assertions" that the statute applies in this case "amount to nothing more than a 'formulaic recitation of the elements'" of the statute. *Iqbal*, 556 U.S. at 681. Plaintiffs' allegations fail to state a plausible claim for relief under each of these alternative theories because Plaintiffs rely only on mere conclusory assertions that the circumstances triggering each alternative were present.

*§ 29-39-104(g)(1)(A)*. With regard to the first alternative under the statute, Plaintiffs' only factual allegations supporting their request for punitive damages is that "[m]anagement at Bright Horizons violated the regulation [at Tenn. Comp. R. & Regs. 1240-04-01-.10] when staff informed them of suspected abuse of Carter and Jack yet failed to report that suspected abuse to TDCS, local law enforcement, or the judge of the juvenile court in the county of the child's residence" (Doc.

---

[7] As suggested above, the Court has no doubt that the same principle applies to a request for punitive damages, even if though that request technically is not actually a "cause of action" (i.e., a claim).

No. 23 at ¶¶ 22, 27), "management at Bright Horizons was aware of but consciously disregarded a substantial and unjustifiable risk of abuse such that its disregard constituted a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances" (*id.* at ¶ 41), and "[t]he misconduct was committed by employees who were in a management capacity while they acted within the scope of employment with Bright Horizons." (*Id.* at ¶ 42).

As Defendant notes, most of Plaintiffs' allegations (such as they are) related to punitive damages involve this alternative. The determinative question is whether Plaintiffs have alleged *factual matter* plausibly suggesting that the omission at issue (i.e., failure to report the suspected child abuse) was committed by "a person employed in a management capacity while that person was acting within the scope of employment." Tenn. Code Ann. § 29-39-104(g)(1)(A). The statute defines "a person employed in a management capacity" as "an employee with authority to set policy and exercise control, discretion, and independent judgment over a significant scope of the employer's business." Tenn. Code Ann. § 29-39-104(g)(3). "Tennessee caselaw provides little guidance in interpreting that definition, and the language of the definition itself leaves considerable room for ambiguity, particularly with regard to the phrases 'set policy' and 'a significant scope of the employer's business.'" *Trimboli v. Maxim Crane Works, L.P.*, No. 3:18-CV-00346, 2020 WL 3546810, at *6 (M.D. Tenn. June 30, 2020).

The Court need not, however, engage in a rigorous interpretation of the meaning of Tenn. Code Ann. § 29-39-104(g)(3) because Plaintiffs' conclusory allegation that "management" was informed of (and then failed to report) suspected child abuse does not plausibly suggest an entitlement to punitive damages. The Amended Complaint contains no facts to support Plaintiffs' conclusion that individuals in a management capacity (that is, individuals with the authority to set policy and exercise control) were advised of the alleged child abuse. Plaintiffs have simply taken

the text of the statute, "[t]he act or omission was committed by a person employed in a management capacity while that person was acting within the scope of employment," Tenn. Code Ann. § 29-39-104(g)(1)(A), and copied that statute into their Amended Complaint, alleging that "[t]he misconduct was committed by employees who were in a management capacity while they acted within the scope of employment with Bright Horizons" (Doc. No. 23 at ¶ 43). Without any further factual support, the Amended Complaint fails to state a plausible claim for punitive damages based on this statutory alternative.

*§ 29-39-104(g)(1)(B)*. As to the second alternative under the statute, Plaintiffs allege that "Bright Horizons was reckless in hiring, retaining, supervising, or training its staff, and that recklessness was the proximate cause of abuse to Carter and Jack." (Doc. No. 23 at ¶ 44). But "Plaintiffs failed to allege facts showing when, how, or why [Defendant] acted at least recklessly with respect to . . . hiring, training, entrustment, supervision, retention, and maintenance" of its employees. *Khozhiev v. Clements Truck & Farm, LLC*, No. 1:21-CV-108, 2023 WL 11760949, at *4 (E.D. Tenn. Feb. 21, 2023). Plaintiffs' assertion that Defendant engaged in reckless "hiring, retaining, supervising, or training" relies exclusively on the bald assertion that "[t]he Court can reasonably infer either managers had no policies or failed to train/supervise the staff"[8] because (according to Plaintiffs) the abuse occurred in this particular case. (Doc. No. 16 at 5, Doc. No. 30 at 8). So, Plaintiffs ask this Court to infer that Defendant failed to train/supervise its staff based on the (alleged) fact that staff engaged here in alleged abuse. Yet if such an inference were indeed permissible, that would make punitive damages awardable in any case where an employee committed acts that caused injury, i.e., a plaintiff could claim that since the employee committed injury-causing conduct, that necessarily means the employer failed to adequately train and/or

---

[8] Plaintiffs' focus is on alleged negligent failure to train and/or supervise, rather than on negligent hiring or retention.

supervise that employee. Particularly given that Plaintiffs have failed to cite any authority supporting courts drawing such a significant inference under these circumstances, the Court declines to draw it. Absent this inference (and, as noted, any supporting factual allegations), Plaintiffs have not stated a plausible claim for punitive damages based on Defendant's alleged negligent failure to hire or train its employees.

*§ 29-39-104(g)(1)(C)*. Plaintiffs' theory of recovery based on the final alternative under the statute, which contemplates a defendant that authorized, ratified, or approved certain conduct, also fails. Plaintiffs allege that "[m]anagement at Bright Horizons authorized, ratified, or approved the abuse with knowledge or conscious or reckless disregard that the abuse may injure Carter and Jack," (Doc. No. 23 at ¶ 44), and that "managers at Bright Horizons allowed the abuse and covered it up." (Doc. No. 16 at 5). But this allegation is wholly conclusory; Plaintiffs have neither alleged any factual matter to support this conclusory allegation nor addressed this theory in any of their briefing. Although Plaintiffs argue that these are "cold hard facts," (Doc. No. 16 at 5), these factual allegations do not rise "above the speculative level" to state a claim for relief. *Twombly*, 550 U.S. at 555. Plaintiffs' Amended Complaint contains no factual allegations to support Plaintiffs' theory that Defendant "covered up" child abuse or, worse, approved of the abuse in any way.

Plaintiffs' Amended Complaint fails to adequately allege facts sufficient to support a claim for punitive damages under any of these alternatives. Rather, Plaintiffs' Amended Complaint simply recites the elements of the statute providing for punitive damages (Tenn. Code Ann. § 29-39-104(g)(1)(A)-(C)) and speculates that Defendant engaged in certain conduct covered by that statute. Accordingly, Plaintiffs' claim for punitive damages is dismissed.

ii.     *RIED Motion.*[9]

A claim for RIED under Tennessee law is essentially a claim based on outrageous conduct. *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000). There are three elements to this cause of action: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (internal quotation omitted). "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement. The conduct must be 'atrocious,' 'utterly intolerable,' and 'beyond all bounds of decency.'" *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018) (quoting *Goldfarb v. Baker*, 547 S.W.2d 567, 569 (Tenn. 1977)). As the Tennessee Supreme Court explained:

> In describing these elements, we have emphasized that it is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress. A plaintiff must in addition show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (internal citation and quotation marks omitted).[10] Additionally, "recovery for intentional infliction of emotional distress is limited

---

[9] It appears from the Amended Complaint that only one Plaintiff, Corrie Anderson, asserts the RIED claim, given that the Amended Complaint discusses only Corrie Anderson's mental injury. (*See* Doc. No. 23 at 10-11). However, as Plaintiffs have not clearly identified this claim as being asserted by only a single Plaintiff, the Court herein will refer to the claim as "Plaintiffs' RIED claim."

[10] As *Bain* and *Lourcy* (though not *Belmont Univ.*) make clear, the question is not whether the defendant's conduct was outrageous, but rather whether the conduct was *sufficiently* outrageous as to be "atrocious," "utterly intolerable," and "beyond all bounds of decency." The Court keeps this distinction in mind, because it is certainly possible that conduct can be considered "outrageous" without being considered "utterly intolerable," and "beyond all bounds of decency." (It seems less likely that conduct could be considered "outrageous" without being considered "atrocious").

to mental injury which is 'so severe that no reasonable [person] would be expected to endure it.'" *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003) (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 615 n.4 (Tenn. 1999)).

As an initial matter, as to RIED, Plaintiffs assert not a theory of vicarious liability, but rather only a theory of direct liability—a theory based on Defendant's *own* nonfeasance and misfeasance rather than upon its status as the employer of individuals who engaged in nonfeasance and misfeasance against Defendant.[11] To give just two examples, the RIED count (Count III), states that "Bright Horizons was reckless" and that "Bright Horizons was supposed to have policies to prohibit staff from employing behavior management techniques that could be 'verbally or physically cruel, harsh, abusive, humiliating, shaming, frightening, or injurious' to children." (Doc. No. 23 at ¶ 47). Therefore, even construing the Amended Complaint in Plaintiffs' favor as required, the Court must and does treat Count IIII as alleging only that Defendant is directly liable for RIED.

---

[11] Plaintiffs could have alleged that Defendant is vicariously liable for the alleged child abuse committed by Defendant's employees. It is "true that a plaintiff may hold an employer vicariously liable for the tortious conduct of its employee for acts the employee committed in the course and scope of her employment," *Rhodes v. Bates Rubber, Inc.*, No. 1:19-CV-01030, 2019 WL 2720212, at *4 (W.D. Tenn. June 27, 2019). And at times, Plaintiffs' briefing appears to reflect the idea that Plaintiffs are asserting a claim for vicarious liability—for example, Plaintiffs state that "[a] corporation can act only through its employees." (Doc. No. 30 at 6). But the Amended Complaint contains no allegations related to a vicarious liability theory on the RIED claim. For example, the Amended Complaint contains no factual allegations related to the RIED claim regarding whether Defendant's employees committed these alleged acts in the course and scope of their employment. Further, the Amended Complaint does not allege vicarious liability but instead focuses on Defendant's failure to train staff or have appropriate policies in place to prevent the alleged abuse.

"To find that" Plaintiffs raised the issue of vicarious liability "would require the Court to essentially rewrite Plaintiff[s'] complaint to create claims that Plaintiff[s] did not raise." *Harris v. Such*, No. 3:22-CV-00738, 2023 WL 3807031, at *4 (M.D. Tenn. June 2, 2023). This "would transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Maney v. Metro Bus Transit Ctr.*, No. 3:24-CV-01141, 2025 WL 1481880, at *2 (M.D. Tenn. May 22, 2025) (quoting *Bell v. Tennessee*, No. 1:11-CV-14, 2012 WL 996560, at *9 (E.D. Tenn. Mar. 22, 2012)). The Court is particularly hesitant to rewrite a complaint where, as here, the Plaintiffs are represented by counsel. Even though a vicarious liability theory might have been the stronger theory for Plaintiffs, this Court must address the (only) theory asserted in Count III, i.e., direct liability.

Plaintiffs' claim for RIED is predicated on the proposition that "[c]hild abuse is outrageous." (*Id.* at ¶ 48). That proposition is easy to accept as a general matter, but the general proposition is not helpful to Plaintiffs, for three reasons. First, the question here is not about generalities concerning child abuse, but rather about what allegedly happened in this particular case, which (even if it involves conduct that could be deemed "child abuse") is devoid of many of the worst circumstances typically associated with "child abuse"; to label particular conduct "child abuse" is not to define the conduct adequately for purposes of the inquiry into whether it is "outrageous" so as to support a claim of RIED. Second, as discussed above—and as Plaintiffs to their credit acknowledge elsewhere in the same paragraph in Count III, (*id.*) —the question is not whether the conduct is "outrageous" but rather whether it is sufficiently outrageous to be deemed "utterly intolerable" and "beyond all bounds of decency."

Third, even if child abuse—or, to be more precise, the particular kind of alleged "child abuse" alleged here—satisfies the "outrageous[ness]" standard for an RIED claim, Plaintiffs' claim is not against the employees who allegedly committed the abuse, as discussed above. Rather, Plaintiffs' claim is against Defendant, and the conduct at issue is not Defendant engaging in child abuse, but rather Defendant "[f]ailing to prevent or report abuse." (*Id.* at ¶ 46). Thus, this Court must decide whether Defendant's alleged *failure to prevent or report* the child abuse is sufficiently outrageous, and (contrary to Plaintiffs' briefing) not whether the underlying child abuse itself is sufficiently outrageous.

Plaintiffs' Amended Complaint lacks sufficient factual matter to plausibly suggest that Defendant's conduct qualifies as sufficiently outrageous. Beyond reciting the bare legal conclusion that Defendant's conduct does so qualify, the Amended Complaint does nothing to establish that Defendant's conduct does so qualify.

Tennessee case law cautions against the Court finding too readily that Defendant's conduct here (such as it was according to the Amended Complaint) was sufficiently outrageous. *See Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3-CV, 2014 WL 2895898, at *7 (Tenn. Ct. App. June 23, 2014) (finding that allegations regarding the concealment of child sexual abuse by a confessed child molester "do not rise to the level of . . . outrageous and extreme conduct"); *Cothran v. Durham Sch. Servs., L.P.*, 666 S.W.3d 369, 379-80 (Tenn. Ct. App. 2022) (no RIED claim based upon school bus crash that killed six children even when plaintiff's amended complaint alleged that employer knew of driver's prior reckless behavior). And Plaintiffs' briefing does nothing to persuade the Court to so find.

To begin with, as discussed above, Plaintiffs' factual allegations as to what Defendant's management knew (and that Defendant in fact knew it) are thin. And on a theory of direct liability, it is what Defendant's management (as opposed to what non-supervisory employees, including the ones committing the alleged abuse) knew that matters.

Second, in their briefing, Plaintiffs provide a single case citation specifically related to an RIED claim, *Doe 1 ex rel. Doe 1 v. Roman Cath. Diocese*, 154 S.W.3d 22 (Tenn. 2005). (Doc. No. 30 at 4). But *Doe 1* primarily discusses the principles that "reckless infliction of emotional distress need not be based upon conduct that was directed at a specific person or that occurred in the presence of the plaintiff," and that a "reckless tortfeasor will be liable only to persons who fall within the reasonably foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by the tortfeasor." 154 S.W.3d at 39, 43. To the extent that Plaintiffs rely on *Doe 1* to argue that it is foreseeable that parents will suffer injury if their child is abused, Defendant does not appear to dispute whether Plaintiffs are within the foreseeable scope of the particular substantial and unjustifiable risk consciously disregarded by Defendant. But that does

not help Plaintiffs here, where the issue instead is whether Plaintiffs have alleged facts plausibly suggesting that Defendant's conduct qualifies as sufficiently "outrageous" to support a RIED claim.

Third, Plaintiffs otherwise cite no authority for the proposition that failing to report the alleged abuse in circumstances like these qualifies as sufficiently outrageous, even if the Court were to accept as true the conclusory allegation that management was aware of the alleged abuse. Plaintiffs instead ask the Court to simply assume that this conduct meets the "outrageous[ness]" standard. Although the Court understands the legitimacy of concerns about non-reporting reports of child abuse, this Court cannot—absent further factual enhancement—conclude that Plaintiffs have plausibly suggested that Defendant's non-reporting was sufficiently outrageous to support the RIED claim.

Further, even assuming that the conduct complained of qualifies as outrageous, Plaintiffs have not adequately alleged that Defendant's conduct *caused* Plaintiffs' distress.[12] As discussed, Plaintiffs have absolutely no factual basis for the claim that Defendant failed to prevent child abuse, aside from Plaintiffs' conclusion that child abuse occurred and therefore, Defendant failed to prevent it. And as to the allegation that Defendant failed to report the child abuse, Plaintiffs have not alleged that it was the failure to report the abuse that caused the injury. Rather, the sole focus of Plaintiffs' Amended Complaint is that "[d]ue to the abuse of her children at Bright Horizons, Corrie has experienced physiological manifestations of emotional distress." (Doc. No. 23 at 10). Although Defendant's conduct might be negligent (as Plaintiffs have a remaining claim against Defendant for negligence), Plaintiffs have not alleged in any way that the failure to report the suspected abuse is what caused them harm. The abuse had already occurred, and Plaintiffs have

---

[12] To be clear, the Court notes that it is referring here to the issue of causation—i.e., whether Plaintiffs' distress resulted from Defendant's conduct, and not whether Plaintiffs suffered distress.

not alleged that Defendant's conduct in subsequently failing to report the abuse caused their injury. Instead, Plaintiffs' sole allegation is that it was the abuse itself that caused them harm. And as previously discussed, Plaintiffs' RIED claim is not related to the individuals who actually committed the abuse. Rather, Plaintiffs' RIED claim is directly against Defendant for a failure to prevent or report the abuse. Accordingly, Plaintiffs have not adequately alleged that Defendant's conduct caused the harm at issue.

## CONCLUSION

For the reasons discussed herein, Defendant's Punitive Damages Motion (Doc. No. 14) and RIED Motion (Doc. No. 28) are each GRANTED. Accordingly, Plaintiffs' claims for punitive damages and RIED are DISMISSED. Otherwise, Plaintiffs claims survive the motion-to-dismiss phase.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE