IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KYLE C. ANDERSON, ET AL., )
)
    Plaintiffs, )
)
                                      )    No. 3:24-cv-01045
v. )
)    JUDGE RICHARDSON
BRIGHT HORIZONS FAMILY )
SOLUTIONS, INC., )
)
    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions filed by Plaintiffs (collectively, "Motions").

The first is "Plaintiffs' Motion for Vacatur" (Doc. No. 68, "Motion for Vacatur"), which is supported by an accompanying memorandum (Doc. No. 67). This motion asks the Court to vacate a prior order (Doc. No. 66, "Order of Dismissal") under Fed. R. Civ. P. 54(b) to the extent that the Order of Dismissal dismissed Plaintiffs' claims for reckless infliction of emotional distress ("RIED") and punitive damages as set forth in Plaintiffs' First Amended Complaint (Doc. No. 23, "FAC"); it also asks the Court pursuant to Rule 15(a) "to allow [the filing of] a Second Amended Complaint to cure the deficiencies" in the FAC that were identified in the Order of Dismissal (Doc. No. 67 at 1).

The second is "Plaintiffs' Motion to Amend" (Doc. No. 70, "Motion to Amend"),[1] which is likewise supported by an accompanying memorandum (Doc. No. 71). This motion, as did the first motion in part, asks the Court to allow the filing of a second amended complaint; in so doing,

---

[1] To the extent that the undersigned's order (Doc. No. 6) referring this case to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) ordinarily would encompass the Motion to Amend, the referral is hereby revoked so that the Motion to Amend can be resolved along with the closely related Motion for Vacatur, which plainly is a motion for the undersigned rather than the Magistrate Judge to handle.

it invokes Fed. R. Civ. P. 15(a)(2) in particular.[2] (Doc. No. 70 at 1). Plaintiffs also filed a proposed second amended complaint (Doc. No. 70-1, "Second Amended Complaint").

Defendant filed a combined response (Doc. No. 73) in opposition to both Motions, and Plaintiffs filed a combined reply (Doc. No. 75) in support of both Motions.

PROCEDURAL HISTORY

Plaintiffs filed their original complaint on August 27, 2024, asserting claims for negligence and recklessness and seeking compensatory and punitive damages. (Doc. No. 1, "Complaint"). In response, on October 7, 2024, Defendant filed a "Motion To Dismiss Plaintiffs' Claim For Punitive Damages" (Doc. No. 14, "Punitive Damages Motion"), seeking thereby to dismiss Plaintiffs' claim for punitive damages. On November 20, 2024, with leave of Court as requested via a motion (Doc. No. 21) filed the day before, Plaintiffs filed the FAC (Doc. No. 23); the FAC is virtually identical to the Complaint, except that the FAC added a claim for RIED. On December 11, 2024, Defendant filed a "Partial Motion To Dismiss Plaintiffs' Amended Complaint," (Doc. No. 28, "RIED Motion"), whereby it sought to dismiss Plaintiffs' claim for RIED in the FAC.

On November 19, 2025, the Court granted in full the Punitive Damages Motion and the RIED Motion via the Order of Dismissal. (Doc. No. 66). In pertinent part, the Court held with respect to the former motion that the FAC contains "mere conclusory assertions that the circumstances triggering each [of the three statutory] alternative[s] [under Tenn. Code Ann. § 29-39-104(g)(1)(A)-(C) for establishing the propriety of punitive damages] were present." (*Id.* at 10.) And with respect to the latter claim, Court held the "[FAC] lacks sufficient factual matter to plausibly suggest that Defendant's conduct qualifies as sufficiently outrageous." (*Id.* at 16). The Court noted that Plaintiffs' claims (not otherwise having been challenged) otherwise survived

---

[2] The first motion referred to Rule 15(a) but not Rule 15(a)(2) in particular.

At no point prior to the issuance of the Order of Dismissal did Plaintiffs amend, or seek any required permission to amend, the FAC to counter the arguments set forth in the Punitive Damages Motion or in the RIED Motion or to otherwise bolster their allegations purportedly supporting an award of punitive damages or their claim of RIED. Instead, as is apparent from Plaintiffs' briefing in opposition to those two respective Motions, Plaintiffs took the following position(s): (i) that the allegations in the Complaint (which went unchanged in the FAC with respect to Plaintiffs claim for punitive damages) were adequate to defeat the Punitive Damages Motion;³ and (ii) that the allegations in the Amended Complaint were adequate to defeat the RIED Motion.

A mere two days after the filing of the Order of Dismissal, Plaintiffs filed the Motion for Vacatur. Therein, oddly invoking both Rule 59 and Rule 54(b) of the Federal Rules of Civil Procedure, Plaintiffs requested vacatur of the Order of Dismissal and leave to file "a Second Amended Complaint to cure the deficiencies [in the FAC]." (Doc. No. 67 at 1). To support this request, Plaintiffs relied exclusively on the alleged discovery of new evidence, asserting that: (i) "[m]aterial evidence," namely "a written complaint submitted by the Defendant's former staffer Etherine Blackman who reported child abuse by the same perpetrators Pamela Hice and Ernestine Crite on December 9, 2021," was "discovered after briefing the motion[s] to dismiss"; (ii) this aforementioned evidence did not exist and was not available when the Plaintiffs responded to the motions to dismiss; (iii) "Plaintiffs acted diligently during discovery and reasonably awaited

---

³ The Amended Complaint was the operative complaint by the time the Court issued its Order of Dismissal, but as indicated herein, it did not differ from the Complaint with respect to Plaintiffs' claim for punitive damages. So the analysis of the Amended Complaint was the same as the analysis would have been had the analysis been done of the complaint that was operative at the time of the briefing on the Punitive Damages Motion (i.e., the Complaint). Notably, Plaintiffs never sought leave to supplemental their briefing on the Punitive Damages Motion after the Amended Complaint was filed.

mediation rather than seeking piecemeal amendment earlier";[4] (iv) "Defendant is not prejudiced by the proposed amendment because it has litigated RIED and punitive damages for nearly a year";[5] (v) "[t]he proposed amendment is not futile"; and (vi) "the new allegations sufficiently plead RIED and punitive damages to survive Rule 12(b)(6)." (*Id.* at 1-2).

LEGAL STANDARDS GOVERNING MOTIONS UNDER RULE 54(b)

Because the Order of Dismissal left pending some of Plaintiffs' claims, it is an interlocutory order governed by Federal Rule of Civil Procedure 54(b).[6] Fed. R. Civ. P. 54(b) (making itself applicable to "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"). So, the Motion for Vacatur is in substance a motion to reconsider an interlocutory order, which is to say a motion under Rule 54(b). According to a persuasive (though non-precedential) opinion from the Sixth Circuit:

> District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment. *See Mallory,* 922 F.2d at 1282. This authority allows district courts "to afford such relief from [interlocutory orders] as justice requires." *Citibank N.A. v. Fed. Deposit Ins. Corp.,* 857 F. Supp. 976, 981 (D.D.C. 1994); *see also Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. 1981). Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Reich v. Hall Holding Co.,* 990 F. Supp. 955, 965 (N.D. Ohio 1998).[7]
>
> Here, the district court set forth general guidelines to help determine whether justice required that it reconsider its interlocutory order.[8] Since the Fund had the evidence at the time of the court's earlier decision, the district court's refusal to consider this evidence is not clearly unjust.

---

[4] Because (according to Plaintiffs) Plaintiffs discovered the alleged new evidence *after* the mediation, this particular point is not probative of whether Plaintiffs should be able to obtain vacatur and amend their complaint again based on that alleged new evidence.

[5] The Court is not sure why this point does not actually work the other way—that Defendant would be prejudiced by vacatur and leave to amend precisely because it has litigated punitive damages and RIED for a year and would lose the victories it has obtained after such litigation.

[6] This is just as Plaintiff asserts. (Doc. No. 67 at 1) ("The dismissal order is interlocutory under Rule 54(b).").

*Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). As *Rodriguez* additionally noted in the above-indicated footnote 7: "This standard obviously vests significant discretion in district courts. However, this and not Rule 11 is the standard governing requests for reconsideration of interlocutory orders. A movant has no right to reconsideration of an interlocutory order simply because the movant makes the motion in good faith." *Id.* at 959 n.7.

As *Rodriguez* makes clear in the last sentence of its language quoted above, when a movant for reconsideration relies upon the existence of alleged new evidence, the Court properly *can* (whether or not it *must*) look to whether the alleged new evidence was in the possession of the movant *at the time of the decision as to which reconsideration is sought* under Rule 54(b). District courts in the Sixth Circuit have indicated likewise. *See, e.g., Asphalt Sys., Inc. v. Unique Paving Materials, Corp.*, No. 1:22-CV-355, 2024 WL 4188290, at *1 (N.D. Ohio Sept. 13, 2024) (relying on the fact that the movant's new evidence "was not available at the time the Court issued its July 10, 2024 denial" of the motion as to which reconsideration was sought); *Walden v. Gen. Elec. Int'l, Inc.*, No. 4:19-CV-00159-DJH-HBB, 2023 WL 12139873, at *5 (W.D. Ky. June 29, 2023) (finding that the movant's alleged new evidence actually "is not new evidence as the undersigned finds that [it merely] supports earlier assertions from [another witness] that were available at the time the District Judge issued the original denial" as to which reconsideration was sought, and thus recommending denial of the motion for reconsideration), *report and recommendation adopted*, No. 4:19-CV-159-DJH-HBB, 2023 WL 12139871 (W.D. Ky. Aug. 25, 2023). *Cf. Nisus Corp. v. Perma-Chink Sys., Inc.*, No. 3:03-CV-120, 2005 WL 5164856, at *4 (E.D. Tenn. Mar. 31, 2005) ("[Previously,] the undersigned also denied Perma-Chink's second motion for reconsideration of assignor estoppel finding that PermaChink failed to present any newly discovered evidence not existing at the time of Judge Collier's initial hearing on assignor estoppel.").

Other courts have gone even further, suggesting that a court addressing a motion to reconsider an interlocutory decision *must* focus on *the time of the decision as to which reconsideration is sought* under Rule 54(b), to the exclusion of some other time (such as the juncture at which briefing was completed on the motion as to which the decision later was made). *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012*), as amended* (Sept. 19, 2012) ("When arguing for reconsideration based on new evidence, the moving party must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." (internal quotation marks omitted)); *In re Rezulin Prod. Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004) ("When newly discovered evidence is the basis for reconsideration, the proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." (collecting cases)). *Accord Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 433 (E.D.N.Y. 2017). The Court does not go that far, but it finds at least that it *may* focus on whether the alleged new evidence had been discovered as of the time of the decision as to which reconsideration is sought.

And in its discretion, the Court chooses to focus on whether the alleged new evidence had been discovered as of the time of the issuance of the decision (i.e., the Order of Dismissal) as to which reconsideration is sought, for multiple reasons. First, by embracing a focus on some earlier time, the Court would tempt parties to hold their new evidence close to the vest if they think so doing is strategically advantageous, *unless and until* the party needs to trot out the evidence on a motion for reconsideration—a temptation that the Court does not wish to foster, for obvious reasons. Second, it is highly inefficient for a (typically overburdened) district court to expend

substantial resources to give the losing party a do-over—an inefficiency that is hard to justify based on alleged new evidence that the losing party had in its possession prior to the decision as to which reconsideration is sought. Third, the Court is loath to metaphorically put its thumb on one side of the scales of justice by issuing orders of dismissal advising plaintiffs of how their complaints are deficient and then allowing plaintiffs to take that advice and use it to amend their complaints to fix the identified deficiencies.

The best Plaintiffs conceivably could muster here is some notion that they received the alleged new evidence less than a week before the issuance of the Order of Dismissal on November 19, 2025, making their failure to bring it to the Court's attention prior to such issuance excusable such that the Court should not hold it against Plaintiffs that the record did not include this evidence at the time the Court issued the Order of Dismissal. According to Plaintiffs, at least, the new evidence (the above-referenced written complaint) was received after the parties' mediation—which the record (Doc. No. 65) reflects was on November 13, 2026. (Doc. No. 75 at 2 ("The document was obtained after mediation . . . .")). At the latest, Plaintiffs' counsel received it on November 14, when they wrote a letter (Doc. No. 67-2) to Defendant's counsel concerning the document.

But Plaintiffs make no such argument, presumably because they assumed incorrectly that the time at issue was the time of conclusion of the ordinary briefing schedule on the Motions. And the Court declines to substantiate (or attempt to substantiate) that argument for Plaintiffs. And in any event, the argument would be hard to substantiate. If the evidence is so important as to justify the extraordinary remedy of reconsideration and vacatur under Rule 54(b), then—with Defendants' Motions having been pending for some time—it should have been brought to the Court's attention within a few days in a motion to amend the complaint a second time. This was not done. And

Plaintiffs cannot use the excuse that counsel lacked time to do so; their counsel was able (virtually immediately) to write a letter (and not a cursory one) to opposing counsel specifically addressing the document at issue and counsel's concerns with it. Moreover, once motivated (belatedly) by the Order of Dismissal to raise the issue, Plaintiffs' counsel was able to respond with a motion and memorandum within two days of the issuance of the Order of Dismissal, and with a second motion and memorandum within five days of such issuance—motions that the Court perceives as more labor intensive than would have been a motion to amend the complaint (or, alternatively, a motion to hold in abeyance a ruling on the two motions pending the filing of a motion to amend the complaint) in advance of the issuance of the Order of Dismissal.

Accordingly, because the alleged new evidence on which Plaintiffs rely had been discovered by Plaintiffs five (or six) days prior to the entry of the Order of Dismissal, the Court finds that it is not "new" evidence to justify reconsideration of the Order of Dismissal. And so the Court denies the Motion for Vacatur to the extent that it seeks vacatur of the Order of Dismissal.

In light of that denial, it should come as no surprise that the Court likewise will deny the Motion to Amend, as well as the Motion for Vacatur to the extent that it (just like the subsequently filed Motion to Amend) requested leave to file a second amended complaint. Based on the denial of the request to vacate the Order of Dismissal, the state of affairs currently remains as it was before: there remains in place a dismissal order.

The Court's decision here to deny Plaintiffs' requested leave to amend is well-supported by case law. The Sixth Circuit has held that "[a]lthough federal courts are inclined to grant leave to amend following a dismissal order, there are circumstances where amendment will not be allowed." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). "[A] district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not

sought." *Id.* at 1042 (citing *Carl Sandburg Village Condominium Ass'n v. First Condominium Dev. Co.*, 758 F.2d 203, 206, n. 1 (7th Cir. 1985)); *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) ("[I]f a party does not file a motion to amend or a proposed amended complaint in the district court, it is not an abuse of discretion for the district court to dismiss the claims with prejudice.") (quoting *CNH Am. LLC v. UAW*, 645 F.3d 785, 795 (6th Cir. 2011)); *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 556 (6th Cir. 2011) ("Plaintiffs having failed to present the issue of amendment, we discern no abuse of discretion in the district court's decision to dismiss their claims with prejudice."); *see also Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 386–87 (6th Cir. 2017). These authorities suggest that it would not be an abuse of discretion for the Court to dismiss Plaintiffs' applicable claims without leave to amend, given that Plaintiffs as of the time of the issuance of the Order of Dismissal had filed neither a motion to amend nor a proposed amended complaint.

And the Court is inclined to take the position of the Eleventh Circuit, which has "rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend." *Avena v. Imperial Salon & Spa, Inc.*, 17-14179, 2018 WL 3239707, at *3 (11th Cir. July 3, 2018). This view gets to the heart of the Court's concern as to both the Motion for Vacatur and the Motion to Amend: that the Court gets blindsided, after granting a motion to dismiss, with post-ruling assertions of reasons why the ruling should have gone the other way and/or effectively should be mooted via leave to amend the complaint. Although every case is unique, the Court perceives that if such assertions carry the day, frequently the result would be substantial waste of judicial resources, unfairness to defendants who have expended resources in connection with the motion to dismiss, even more delay than the delay frequently encountered in today's overburdened courts, and (probably less frequently) the rewarding of litigative gamesmanship.

The Court perceives that the first three (though not the fourth) of these results would obtain in the present case were Plaintiffs to obtain the relief they seek. For this reason, and the additional reasons discussed above, the Court in its discretion **DENIES** both "Plaintiffs' Motion for Vacatur" (Doc. No. 67) and "Plaintiffs' Motion to Amend" (Doc. No. 70, "Motion to Amend") in their entirety.

ADDITIONAL MOTIONS

There are several additional pending motions in this action that the Court will also address herein.

First, "Bright Horizons Family Solutions, Inc.'s Motion to Strike Doc. No. 60 Due to Clerical Error" (Doc. No. 63) is **GRANTED** as unopposed and otherwise well taken. Defendant's "Motion to Ascertain Status" (Doc. No. 78), which seeks "to ascertain the status of the parties' pending motions and the trial date in this matter," *id.* at 2, is **DENIED** as moot in light of the entry of this order and the recent order re-setting trial (Doc. No. 79).

Next is "[Defendant]'s Motion for Leave to File Motion for Partial Summary Judgment." (Doc. No. 56, "Motion for Leave to File"). As Defendant has recently (and accurately) represented to the Court, (Doc. No. 77 at 2), in light of the dismissal of Plaintiffs' claims for RIED and punitive damages, the only remaining claim as to which Defendant seeks partial summary judgment is Plaintiffs' claim for recklessness. Plaintiffs' only other remaining claim, for negligence, is not challenged via Defendant's proposed motion for partial summary judgment (Doc. No. 58, "Proposed Motion for Partial Summary Judgment"), which was filed contemporaneously with the Motion for Leave to File.

The Court agrees with the following assessment from another district court: "Motions for partial summary judgment are generally disfavored because they are resolved by orders that cannot

be appealed until final adjudication. As a result, they are only permitted if they benefit the parties and serve the interest of judicial economy." *Right Way Nutrition, LLC v. Gen. Nutrition Corp.*, 421 F. Supp. 3d 78, 87 (W.D. Pa. 2019) (citing *RePass v. Vreeland*, 357 F.2d 801, 805 (3d Cir. 1966)). *See also, e.g., Oto Software, Inc. v. Highwall Techs., LLC*, No. 08-CV-01897-PAB-CBS, 2010 WL 3842434, at *22 (D. Colo. Aug. 6, 2010) ("motions for partial summary judgment are disfavored" (citing *Bruschini v. Board of Education of Arlington Central School District,* 911 F. Supp. 104, 106 (S.D.N.Y. 1995))), *report and recommendation adopted*, No. 08-CV-01897-PAB-CBS, 2010 WL 3842430 (D. Colo. Sept. 27, 2010). And although it often goes unsaid, the Court enjoys discretion in declining to consider a motion for partial summary judgment on the grounds that such consideration would not promote judicial efficiency. *See, e.g., Harmon v. Shell Oil Co.*, No. 3:20-CV-00021, 2023 WL 8014235, at *4 (S.D. Tex. Nov. 9, 2023) ("The Fifth Circuit has explained that a district court retains discretion to deny a motion for partial summary judgment, even if there are no genuine issues of fact, when the proposed motion does not ultimately advance the ultimate resolution of a case." (citing *Powell v. Radkins,* 506 F.2d 763, 765 (5th Cir. 1975))), *report and recommendation adopted*, No. 3:20-CV-21, 2025 WL 366296 (S.D. Tex. Feb. 3, 2025).

      Here, the Court exercises its discretion to decline to consider—that is, the Court declines to grant the Motion for Leave to File—the Proposed Motion for Partial Summary Judgment. The Court is far from convinced that such consideration would promote judicial efficiency. For one thing, that motion could be denied in full, in which case it would not have served in any way to narrow the issues for trial. *Drew v. Ocwen Loan Servicing, LLC*, No. 8:14-CV-369-T-26TGW, 2015 WL 12698435, at *1 (M.D. Fla. May 20, 2015). For another, the amount of time it very likely will take to resolve the Proposed Motion for Partial Summary Judgment is very substantial. By the Court's count, Defendant filed (at Docket Nos. 58, 61, and 62) 275 pages in connection with the

Proposed Motion for Partial Summary Judgment.[7] And that, of course, does not include whatever Plaintiffs would file in response and whatever Defendant would file in reply—all of which may narrow the issues for trial only somewhat or indeed not at all. The Court declines to gamble with very substantial judicial resources, which are in short supply these days. The Court instead will take its chances that the case will be resolved either short of trial—(something that the Court urges the parties to work toward)—or at an efficient trial.

This leads to the Court's final point in resolving the Motion for Leave to File. If the Court were to grant the Motion for Leave to File, and thus consider the Proposed Motion for Partial Judgment, the (potential) granting of the Proposed Motion for Partial Summary Judgment would not serve to eliminate the trial. Instead, it would result in a trial on solely a negligence theory, rather than a trial on a negligence theory *and* a recklessness theory. The Court has no doubt that the evidence of negligence (and damages therefrom) naturally would encompass much (if not all) of the evidence of recklessness (and damages therefrom). The Court also has no doubt that a trial on both theories would be only slightly longer and more complex (in terms of argument, jury selection, and jury instructions) than would be a trial solely on a negligence theory. Accordingly, the Motion for Leave to File (Doc. No. 56) is **DENIED**.

Finally, given the denial of the Motion for Leave to File, the Clerk is **DIRECTED** to strike the proposed motion for partial summary judgment (Doc. No. 58), as well as the documents filed in support thereof (Doc. Nos. 60, 61, 62).[8] And with those documents stricken, Defendant's motion to file these documents under seal (Doc. No. 59) is **DENIED** as moot.

---

[7] To the extent that Plaintiff might posit that the Court does not actually have to read every page of every exhibit, or at least not every word of every exhibit, that would be slight comfort to the Court.

[8] Should this case proceed to trial, it is possible that these documents can be repurposed to an extent as a trial brief, should trial briefs be ordered or at least permitted as this case reaches the trial phase.

CONCLUSION

Accordingly, for the reasons described herein, both "Plaintiffs' Motion for Vacatur" (Doc. No. 67) and "Plaintiffs' Motion to Amend" (Doc. No. 70, "Motion to Amend") are **DENIED** in their entirety. Additionally, "Bright Horizons Family Solutions, Inc.'s Motion to Strike Doc. No. 60 Due to Clerical Error" (Doc. No. 63) is **GRANTED**, and the Clerk is **DIRECTED** to strike the filing at Docket No. 60. Defendant's "Motion to Ascertain Status" (Doc. No. 78) is **DENIED** as moot. The Motion for Leave to File (Doc. No. 56) is **DENIED** and the Clerk is **DIRECTED** to strike the proposed motion for partial summary judgment (Doc. No. 58), as well as the documents filed in support thereof (Doc. Nos. 60, 61, 62). Defendant's motion to file these documents under seal (Doc. No. 59) is **DENIED** as moot.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE